IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| SINGING RIVER ELECTRIC § | | |
| POWER ASSOCIATION § | | PLAINTIFF |
| § | | |
| v. § | Civil Action No. 1:10cv486-LG-RHW | |
| § | | |
| BELLSOUTH § | | |
| TELECOMMUNICATIONS, INC. § | | DEFENDANT |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS
AND GRANTING SINGING RIVER'S MOTION TO AMEND**

**BEFORE THE COURT** is the Motion to Dismiss [44] filed by Bellsouth Telecommunications, Inc. Singing River Electric Power Association has filed a response in opposition to the Motion and a Motion to Amend its First Amended Complaint [51]. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Bellsouth's Motion to Dismiss is granted as to Singing River's unjust enrichment claim and denied in all other respects. The Court further finds that Singing River's Motion to Amend its First Amended Complaint in order to clarify the declaratory judgment relief sought should be granted.

FACTS AND PROCEDURAL HISTORY

Singing River and Bellsouth entered into a General Agreement for Joint Use Poles that permits either party to lease space on utility poles owned by the other party. (Ex. A to Compl.) The Agreement required the parties to pay an annual rental fee per utility pole. (*Id*. at Art. XI (A)). The parties agreed to tabulate the number of joint use poles prior to November 15th of each year. (*Id*. at Art. XI (D)). As a result, the parties

provided certifications to each other every year that detailed the number of joint use poles in use.  The Agreement also provided:

> At intervals not exceeding five (5) years, an actual physical inventory of Joint Use Poles shall be made by representatives of the Parties.  If any difference in the number of Joint Use Poles is found between the actual physical inventory and the previous inventory adjusted by any applications approved or attachments removed since the last inventory, the differential will be presumed to have occurred equally over the time since the last inventory and prorated equally over that time.  That differential shall be billed at the appropriate rate for each of the prorated years . . . .

(*Id.* at Art. XI (F)).

Singing River filed its original complaint against Bellsouth, seeking a declaratory judgment providing a favorable interpretation of the contract language. It also filed a claim for unjust enrichment and specific performance.  It sought monetary damages, attorneys' fees, and punitive damages.

Bellsouth filed a Motion to Dismiss [4] Singing River's original complaint. However, as the Court explained in its Memorandum Opinion and Order [25] Granting in Part and Denying in Part Defendant's Motion to Dismiss, Bellsouth's arguments with regard to Singing River's declaratory judgment claim only concerned the meaning of the word "presumed" as it was used in Art. XI (F) of the Agreement.  Specifically, the parties disagreed over whether the presumption is conclusive or rebuttable. The Court held that the presumption that the differential would be prorated equally is conclusive in nature.  However, the Court did not reach the issue of what effect its construction of the meaning of the word *presumed* had on Singing River's declaratory judgment claims, aside from those that sought a particular definition of the word *presumed*.  The

-2-

Court also held, "Because an Agreement existed between Singing River and Bellsouth and Singing River is seeking relief pursuant to that Agreement, it has not stated a claim for unjust enrichment." (Mem. Opinion and Order [25] at 10).  Furthermore, the Court dismissed the punitive damages claim, the attorneys' fees, and part of the specific performance claim.  (*Id.* at 11-12).

Singing River filed a Motion to Reconsider [28] the Court's Memorandum Opinion and Order [25].  It argued that the Court improperly construed the word, "presumed."  According to Singing river the Court of failing to consider the entire Agreement and the fact that actual physical inventories were not conducted every five years as required by the Agreement.  It also asserted that performance of an actual physical inventory every five years was a condition precedent to the invocation of the rent adjustment formula.  In addition, it sought time to conduct discovery or submit parol evidence concerning the meaning of "presumed."

The Court denied the Motion to Reconsider, holding that Singing River had not demonstrated a need to correct a manifest error in law of fact. (Mem. Opinion and Order [25] at 10).  However, the Court noted that it had in fact read and considered the entire Agreement when it determined the meaning of the word presumed.  (*Id.* at 3). The Court also stated:

> [T]he Court reminds the parties that it has merely construed the meaning of the word *presumed* as it is used in the parties' Agreement.  The Court has not determined the effect that determination may have on Singing River's declaratory judgment claim, because Bellsouth did not demonstrate that the entire declaratory judgment claim should be dismissed.

(*Id.* at 5).

Singing River obtained permission to file its First Amended Complaint [41]. It once again sought a declaratory judgment, but this time it did not specify the declaratory judgment(s) that it sought. It also alleged a breach of contract claim and a specific performance claim. It seeks monetary damages. Bellsouth has filed a Motion to Dismiss the First Amended Complaint.

## DISCUSSION

In order to avoid dismissal pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555. The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, the court "may not rely upon conclusional allegations or legal conclusions disguised as factual allegations." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

**A. Singing River's Declaratory Judgment Claim and its Motion to Amend:**

Bellsouth argues that Singing River's declaratory judgment claim should be dismissed, because Singing River did not specify the declaratory judgment(s) that it seeks. Singing River counters that it omitted the specific requests, because it believed

that Bellsouth would object to its Motion to Amend the Complaint if it made specific requests. Singing River notes that its requests are contained in the facts section of the First Amended Complaint. In the alternative, it seeks permission to file a Second Amended Complaint that delineates the declarations that it seeks. Bellsouth argues that Singing River should not be granted permission to amend, because the request to amend is untimely, and some of the declarations sought by Singing River are futile.

The declarations sought by Singing River are:

1. That a Joint Use Pole is a pole upon which space is provided under this Agreement for the Attachments of both Parties, whether such space is actually occupied by Attachments or reserved therefore upon specific request and consistent with applicable law;
2. That a pole becomes a Joint Use Pole once the other Party attaches;
3. That a pole remains a Joint Use Pole until written notification of the removal by the attaching Party is given to the Owner of the pole;
4. That a pole remains a Joint Use Pole unless and until the attaching Party provides written notice, that said space is no longer being reserved for future use;
5. Agreeable to [Bellsouth's] Form 6407, the number of Singing River's MS Joint Use poles on which [Bellsouth] agreed to pay for attaching or reserving space is:
1999 -50,650; 2000 - 50,605; 2001 - 51,572; 2002 - 52,086; 2003 - 52,086; 2004 - 52,336; 2005 - 52,336; 2006 - 52,336; 2007 - 52,336; 2008 - 45,010.
6. That the physical inventory occurring in 2008 only counted existing Attachments, and failed to take into account existing Joint Use poles for which Bellsouth continued to reserve space.
7. (Deleted by Singing River due to District Court Order)
8. That for the calendar and billable year 2008, Bellsouth owes Singing River the sum of $1,039,902.75, with applicable interest and/or penalties as provided in the Agreement from and after April 1, 2009.
9. After a partial late payment was offered by Bellsouth, the balance due to Singing River] by [Bellsouth] as of August 1, 2010 for the 2008 year is $958,033.46;
10. That the rent adjustment or "true-up" formula of Article XI F has no application when the physical inventory failed to occur in 2004 as the parties agreed.
11. Alternatively, that the the reduction in Joint Use Poles occurred in

>    2008, as evidenced and verified by the 2008 pole count of 45,010 Attachments to Joint Use Poles;
>    12.  That a pole, once attached, remains a Joint Use Pole until written notification concerning the abandonment of the pole is given to the Owners of the pole.  Otherwise, space is reserved and the pole continues as a Joint Use Pole with reserved space in the future.
>    13.  The rent reduction provision in Article XI F cannot apply to the instant facts because Bellsouth failed to comply with the language requiring an inventory not to exceed <u>five</u> years and did not participate in a comprehensive inventory for <u>nine</u> years.
>    14.  Bellsouth waived the right to a rent adjustment by refusing to participate in a physical inventory during 2004.

(Singing River's Proposed 2d Am. Compl. at 2-3).

The Court finds that Singing River's specific requests for declaratory judgment are similar to statements included in the facts section of its First Amended Complaint. However, the specific declarations that Singing River seeks cannot be gleaned from the facts section.  Therefore, the Court will consider whether Singing River should be allowed to amend its complaint to clarify the declaratory relief sought.

Since Singing River's request for permission to amend the complaint was filed after the deadline established by the Court's Case Management Order, which was July 20, 2011,[1] its amendment can only be accepted for good cause and with the judge's consent.  *See S&W Enters. v. Southtrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003) (citing Fed. R. Civ. P. 16(b)).  "[T]he good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *Southtrust Bank*, 315 F.3d at 535.  Four factors should

---

[1] The Case Management Order [40] provides that the deadline for filing motions to amend the pleadings is July 20, 2012, but the parties agree that this was a scrivener's error.

be considered when determining whether good cause has been demonstrated: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.

Singing River argues that it could not have filed its Motion prior to the deadline, because its Motion was filed in response to a Motion to Dismiss that was filed by Bellsouth on the same day that the deadline for filing a motion to amend expired. Furthermore, it is clear that Singing River felt that its request for declaratory judgment was sufficient due to its detailed fact section and did not realize that any possible deficiency existed until the Motion to Dismiss was filed.

The Court finds that the amendment is very important to Singing River's case, but there is no potential for prejudice to Bellsouth given that nine of the proposed declarations – Numbers 1, 2, 3, 4, 5, 8, 9, 11, and 12 – are almost identical to those set forth in the original Complaint.[2]  And, the other four proposed declarations – Numbers 6, 10, 13, and 14 – are similar to facts and allegations included in the First Amended Complaint. Thus, Singing River is not seeking to add a new cause of action. It is merely asking to clarify the relief sought in its previous complaints. Furthermore, it is important to note that no discovery had been conducted in this case before the Motion to Amend was filed. For these reasons, the Court finds that good cause exists

---

[2] The original Complaint is included in the record as attachment 2 to Bellsouth's Notice of Removal, but the pages are out of order. The proposed declarations are included on pages 9 and 12 of the attachment.

for extending the amendment deadline.

The Court must now address Bellsouth's argument that the amendment is futile. It first argues that Declarations 5, 8, 9, 10, 11, 13, and 14 should be rejected pursuant to this Court's interpretation of Article XI (F). Specifically, it argues that these proposed declarations are an attempt to rebut the presumption that the differential between actual physical inventories occurred equally. However, as the Court made clear in both its Memorandum Opinion and Order [25] and Order Denying Motion for Reconsideration [38], the Court merely construed the meaning of the word "presumed." (*See* Mem. Op. and Order [25] at 9; Order [38] at 2). The Court has never held that the rent adjustment formula contained in Art. XI (F) of the Agreement should be applied either in whole or in part under the circumstances presented here. Moreover, although Singing River argued that conducting actual physical inventories every five years was a condition precedent in its Motion to Reconsider, the Court did not address that argument, because that argument did not affect the meaning of the word "presumed"-- the only issue before the Court at that time.

Contrary to Bellsouth's assertion, Singing River is no longer attempting to argue that the presumption should be rebutted;[3] rather, it asserts that the presumption only has effect when the parties conduct actual physical inventories every five years. The Agreement undisputedly requires that actual physical inventories be performed every

---

[3] This argument was omitted from Singing River's First Amended Complaint and proposed Second Amended Complaint, due to the Court's Memorandum Opinion and Order [25].

-8-

five years.  The issue of whether that requirement forms a condition precedent has never been properly submitted to the Court.  Furthermore, the Court is unconvinced by Bellsouth's argument that the term "five years" must be inserted into nearly every phrase in Art. XI (F) of the Agreement in order to create a condition precedent, or that Singing River's argument is clearly contradicted by the Agreement's language.  (*See* Def.'s Mem. [45] at 11; Def.'s Mem. [57] at 11-12).  Therefore, the Court finds that Singing River's request for permission to amend its First Amended Complaint to add declarations 5, 8, 9, 10, 11, 13, and 14  is not futile.

Bellsouth also argues that declarations 1, 2, 3, 4, 6, and 12 should be rejected as futile.  It argues that declaration 1 is a direct quote from the Agreement, and declaration 2 is subject to two different interpretations.  Declarations 3, 4, 6, and 12 directly contradict the Agreement, it claims.

Declaration 1 provides, "a Joint Use Pole is a pole upon which space is provided under this Agreement for the Attachments of both Parties, whether such space is actually occupied by Attachments or reserved therefore upon specific request and consistent with applicable law."  It is undisputed that declaration 1 is the definition of "joint use pole" found in Article II of the Agreement.  Nevertheless, the parties clearly dispute what this statement means, as explained *infra*.

Declaration 2 provides that "a pole becomes a Joint Use Pole once the other Party attaches." Bellsouth asserts that this declaration could have two meanings– that a pole remains a joint use pole until an attachment is removed or that a pole remains a joint use pole regardless of whether the attachment is removed.  The Court disagrees.

-9-

The proposed declaration merely pertains to the time at which a pole becomes a joint use pole, and is merely a partial restatement of declaration 1. The declaration does not address when a joint use pole ceases to be such.

Declarations 3, 4, 6, and 12 each provide that a pole remains a joint use pole until the attaching party notifies the owner that the attachment has been removed and space should no longer be reserved on the pole for an attachment. The Court agrees with Bellsouth that there is no specific notice requirement concerning removal of attachments. However, Singing River argues that the attaching party continues to reserve space on poles even after it removes attachments and that poles on which space is reserved for attachments "upon specific request" constitute joint use poles. Bellsouth appears to place emphasis on the requirement of a specific request for a reservation of space. The Court cannot determine at this stage of the proceedings what the parties meant by "upon specific request," *i.e.*, whether the initial request for permission to place an attachment on a pole could be viewed as a specific request, or whether the parties utilized a special form or procedure for reservation of poles. Therefore, the Court finds that an amendment adding declarations 1, 2, 3, 4, 6, and 12 would not be futile.

As a result, the Court finds that Singing River's Motion to Amend its First Amended Complaint [51] to specify the declarations that it seeks should be granted. However, Singing River is cautioned that it should not include any claims that have previously been dismissed by the Court, such as an unjust enrichment claim or an argument that the presumption in the Agreement is a rebuttable presumption.

**B. Singing River's Unjust Enrichment Claim:**

As this Court previously held when it dismissed the unjust enrichment claim included in Singing River's original Complaint:

> The doctrine of unjust enrichment 'applies to situations where there is no legal contract but where the person sought to be charged is in possession of . . . property which in good conscience and justice he should not retain but should deliver to another . . . .' Because an Agreement existed between Singing River and Bellsouth and Singing River is seeking relief pursuant to that Agreement, it has not stated a claim for unjust enrichment.

(Mem. Opinion & Order [25] at 9-10) (quoting *Joel v. Joel*, 43 So. 3d 424, 432 (¶27) (Miss. 2010)).

In its First Amended Complaint, Singing River attempts to revive its unjust enrichment claim. It argues that Bellsouth's failure to notify Singing River when it removed attachments constituted unjust enrichment. (1st Am. Compl. at 12). In addition, it contends that Bellsouth would be unjustly enriched if it is allowed to claim an equal time differential after it failed to comply with the Agreement's requirement that pole counts be conducted every five years. (*Id.* at 13). Once again, a valid Agreement existed between Singing River and Bellsouth, and Singing River's alleged unjust enrichment claim is based on the terms of that Agreement. Therefore, the unjust enrichment claim must be dismissed.

**C. Singing River's Breach of Contract Claim:**

Bellsouth argues that Singing River's breach of contract claim is solely based on its failure to participate in a pole count in 2004 as required by the Agreement. It argues that this claim is foreclosed by the Court's interpretation of Article XI (F) in its

Memorandum Opinion and Order [25]. In the alternative, it argues that the statute of limitations has run as to this claim.

Singing River counters that its claim concerning the failure to participate in a pole count constituted a continuing breach of contract. Furthermore, it argues that it has alleged more than one breach of contract. It lists the following alleged breaches in its Response to the Motion to Dismiss: (1) Bellsouth's failure to participate in a pole count until 2008; (2) Bellsouth's attempt to render payment in 2009 that was not in accordance with the contract terms; (3) Bellsouth's failure to abide by the Agreement's billing requirements; (4) Bellsouth's failure to count "joint use poles" in accordance with the definition provided in the Agreement; (5) Bellsouth's failure to notify Singing River that it had removed attachments; and (6) Bellsouth's failure to pay undisputed amounts due in the time frame contemplated by the Agreement. (Pl.'s Resp. at 9). In its Response, Singing River did not identify where these allegations appear in its First Amended Complaint; thus the Court was required to sift through the entire First Amended Complaint in an attempt to find these allegations.

The section of the First Amended Complaint that discusses Singing River's breach of contract claim described the following alleged breaches – the failure to participate in a pole count until 2008 and the failure to notify Singing River when attachments were removed. (1st Am. Compl. at 11-13). The breach of contract section also incorporates all of the facts and allegations made in the remainder of the First Amended Complaint. (*Id.* at 11). In the facts section of the Agreement, Singing River alleges that all "joint use poles" were not counted during the 2008 pole count. (*Id.* at

8). The allegations concerning Bellsouth's alleged failure to comply with the Agreement's billing requirements and failure to pay undisputed amounts appear in the section labeled "Damages." (*Id.* at 15-16).

Although the Court recognizes that it was difficult to locate these allegations of breach of contract in the First Amended Complaint, the Court finds that Singing River has pled "enough facts to state a claim to relief that is plausible on its face" with regard to its breach of contract claim. *See Twombly*, 550 U.S. at 570. Furthermore, the Court finds that the portion of the claim pertaining to the failure to conduct the five-year pole count is not foreclosed by this Court's prior orders for the reasons stated *supra* concerning the declaratory judgment claim. Thus, the Court will consider whether this portion of the claim is barred by the statute of limitations.

The original Complaint was filed September 1, 2010, and the initial failure to conduct the five year pole count occurred in 2004. The parties do not dispute that the three-year statute of limitations set forth at Miss. Code. Ann. § 15-1-49(1) applies to this claim. Bellsouth argues that a continuing breach of contract claim is not recognized in Mississippi. However, both the Fifth Circuit and this Court have implicitly recognized that such a claim exists under Mississippi law. *Merchants & Marine Bank v. Douglas-Guardian Warehouse Corp.*, 801 F.2d 742, 745 (5th Cir. 1986); *Provenza v. Stamps*, No. 1:09cv191-LG-RHW, 2010 WL 706480 at *2 (S.D. Miss. Feb. 22, 2010). Bellsouth claims that these two cases are distinguishable, because the breaches at issue in *Provenza* and *Merchants & Marine* constituted multiple

affirmative acts, while the alleged breach in the present case occurred on one occasion in 2004. This argument disregards the fact that Singing River alleges in its First Amended Complaint that "Bellsouth failed to participate in a physical inventory in 2004 *and delayed the inventory until 2008*, nine years after the 1999 inventory." (1st Am. Compl. at 13)(emphasis added). Although Bellsouth claims that some, if not all of the delay was caused by Hurricane Katrina, the Court must accept the allegations of the First Amended Complaint as true and view them in the light most favorable to Singing River. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. In addition, the Court finds the following description of continuing torts adopted by the Mississippi Supreme Court is persuasive as to the issue of whether the alleged breach constituted a continuing breach of contract:

> This principle [of "continuing injury"] applies, however, in situations where the defendant commits repeated acts of wrongful conduct, not were harm reverberates from a single, one-time act or omission:
>
> [W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.
>
> A "continuing tort" is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.

*Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993). The Court finds that Bellsouth's alleged delay of the pole count from 2004 through 2008 constitutes repeated and continuous acts of alleged wrongful conduct, rather than continued ill effects caused

by the alleged 2004 failure.  Therefore, the statute of limitations has not run with regard to Singing River's breach of contract claim.  Bellsouth's Motion to Dismiss is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss [44] filed by Bellsouth Telecommunications, Inc., is **GRANTED** as to Singing River's unjust enrichment claim and **DENIED** in all other respects.

**IT IS FURTHER ORDERED AND ADJUDGED** that Motion to Amend First Amended Complaint [51] should be **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 26th day of October, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE